**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| LAURA GARNER, § | |
| *Plaintiff* § | |
| § | |
| v. § | No. 1:22-CV-0563-DH |
| § | |
| KILOLO KIJAKAZI, ACTING § | |
| COMMISSIONER OF THE § | |
| SOCIAL SECURITY § | |
| ADMINISTRATION; § | |
| *Defendant* § | |

## MEMORANDUM ORDER AND OPINION

Before the Court are Plaintiff's Opening Brief, Dkt. 17, Brief in Support of the Commissioner's Decision, Dkt. 18, and Plaintiff's Reply, Dkt. 19.

### I. GENERAL BACKGROUND

Plaintiff, Laura Garner, filed an application for Disability Insurance Benefits and Supplemental Security Income on March 6, 2019, alleging disability commencing November 29, 2018. She alleges disability caused by rheumatoid arthritis of the knees and ankles and hypertension. After administrative level denials, Garner appeared with her attorney, and a vocational expert testified before an administrative law judge on September 17, 2020, May 13, 2021,[1] and September 2, 2021. On October 21, 2021, the ALJ issued an unfavorable decision, finding that Garner was not disabled. The Appeals Council denied a request for review on December 5, 2021. Having exhausted her administrative remedies, Garner filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[1] Ms. Garner failed to appear for this hearing.

1

At step one, the ALJ determined that Garner had not engaged in substantial gainful activity since her alleged disability onset date of November 29, 2018. At step two, the ALJ found that Garner's degenerative joint disease, borderline diabetes mellitus, obesity, hyperlipidemia, and hypertension qualified as severe impairments, but that several other medically determinable impairments did not qualify as severe. At step three, the ALJ concluded that Garner's impairment or combination of impairments did not meet or medically equal a listed impairment. Next, the ALJ determined that Garner retained the residual functional capacity (RFC) to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b), except the claimant can lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for six of eight hours; and sit for six of eight hours. The claimant can occasionally climb stairs, balance, stoop, kneel, crouch, and crawl, but cannot climb ladders. She cannot have concentrated exposure to temperature extremes. The claimant requires the option to stand or walk for half an hour and then sit for fifteen to thirty minutes throughout the day while remaining on task.

Tr. 17. Further, the ALJ noted that: "after careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.*

At step four, the ALJ found that Garner could not perform her past relevant work as a cook. At step five, considering Garner's age, education, residual functional capacity and prior work experience, and relying on vocational expert testimony, the

ALJ found that Garner could perform other work that exists in significant numbers in the national economy, namely small parts assembler, cashier, and hand packager, all light unskilled jobs. Accordingly, the ALJ found Garner not disabled at step five.

In support of remand, Garner argues that that ALJ's residual functional capacity determination is unsupported by substantial evidence. Dkt. 17, at 6.

## II. STANDARD OF REVIEW

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine if a claimant is able to engage in "substantial gainful activity" (and therefore if she is disabled), the Social Security Commissioner uses a five-step analysis:

1. a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

2. a claimant will not be found to be disabled unless he has a "severe impairment";

3. a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors;

4. a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and

5. if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

20 C.F.R. § 404.1520; *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). A finding of disability or no disability at any step is conclusive and terminates the analysis. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The claimant has the burden of proof for the first four steps; at step five, the burden initially shifts to the Commissioner to identify other work the applicant is capable of performing. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). Then, if the Commissioner "fulfills his burden of pointing out potential alternative employment, the burden ... shifts back to the claimant to prove that he is unable to perform the alternate work." *Id.* (citation omitted).

Congress has limited judicial review of the Commissioner's final decision under the Social Security Act to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner correctly applied the relevant legal standards. 42 U.S.C. § 405(g); *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997). Substantial evidence is more than a scintilla of evidence but less than a preponderance—in other words, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). The Court considers four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Id.* at 174. However, the reviewing court may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner.

*Greenspan*, 38 F.3d at 236. The Court may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If the Court finds substantial evidence to support the decision, the Court must uphold the decision. *Selders*, 914 F.2d at 617 ("If the ... findings are supported by substantial evidence, they are conclusive and must be affirmed."); 42 U.S.C. § 405(g). A finding of no substantial evidence will only be made where there is a conspicuous absence of credible choices or no contrary medical evidence. *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).

### III.   ANALYSIS

Garner argues that the ALJ erred, and her opinion is not based on substantial evidence, because she failed to properly assess Garner's residual functional capacity, determining she could perform light work. Garner asserts that in determining her residual functional capacity: (1) the ALJ failed to properly evaluate the opinion of Dr. Bahm, namely the ALJ did not follow the regulatory requirements governing consideration of opinion evidence, specifically supportability; and (2) the ALJ erred by making a residual functional capacity finding without mirroring a medical opinion and relied on lay interpretations of Garner's medical condition. Dkt. 18, at 4.

On January 14, 2021, Garner presented to Sandy Bahm, M.D., for a consultative examination. Tr. 718. Garner reported right knee pain that was aggravated when working. Tr. 718. She also reported that if she sits too long her right knee goes numb and she feels like her knee wants to give away. Tr. 718. An x-ray of the right knee from January 14, 2021, showed mild degenerative osteoarthritis in the

medial right knee joint compartment. Tr. 719. Dr. Bahm noted this imaging demonstrated a little bit of narrowing in the medial compartment. Tr. 718. Examination of the right knee revealed flexion up to 100 degrees. Tr. 720. Garner was also tender on the medial joint line, and she had a positive Homan's sign. Tr. 718. After examination, Dr. Bahm assessed Garner with early osteoarthritis of the right knee, and found she may or may not have a torn meniscus. Tr. 718. Dr. Bahm opined the following limitations:

> frequently lift up to 100 pounds; continuously carry up to 20 pounds; and never carry more than 20 pounds; sit/stand/walk for one hour at a time; sit/stand/walk for two hours in a workday; occasionally climb stairs/ramps and balance; never climb ladders/scaffolds, stoop, kneel, crouch, and crawl; and frequently tolerate exposure to unprotected heights, moving mechanical parts, humidity/wetness, pulmonary irritants, extreme heat/cold, and vibrations.

Tr. 722-726.

The RFC determination is the "sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). When making the RFC determination, the ALJ must consider all medical opinions contained in the record. *Id.*; 42 U.S.C. § 405(b)(1). The ALJ must "incorporate limitations into the RFC assessment that were most supported by the record." *Conner v. Saul*, No. 4:18-CV-657, 2020 WL4734995, at *8 (S.D. Tex. Aug 15, 2020) (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). As an administrative factfinder, the ALJ is entitled to significant deference in deciding the appropriate weight to accord the various pieces of evidence in the record, including

the credibility of medical experts and the weight to be accorded their opinions. *See Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

## A. Supportability

In evaluating claims filed March 27, 2017, or later, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017). Rather, the ALJ shall "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the factors set forth in the regulations: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(a), (c)(1)-(5). Of these, supportability and consistency are the most important factors. *See* 20 C.F.R. §§ 404.1520(b)(2), 404.1520c(a).

Supportability means the degree to which objective medical evidence supports the medical opinion at issue. 20 C.F.R. § 404.1520c(c)(1)-(2). The ALJ must articulate how persuasive he or she finds each of the opinions in the record and explain his or her conclusions regarding the supportability factor. 20 C.F.R. §§ 404.1520c(b)(2).

In this case, the record shows that ALJ found as follows:

7

> In conjunction with a January 2021 evaluation, consultative examiner, Sandy Bahm, MD, opined that the claimant would be able to lift and carry upwards of twenty pounds on a frequent basis but would be able to walk or stand for only four of eight hours cumulatively and sit for two of eight hours (Exhibit 9F/6-9). Further, Dr. Bahm noted that the claimant could occasionally balance and climb ramps or stairs but could never stoop, kneel, crouch, crawl, or climb ladders, ropes and scaffolds (Id.). This opinion is partially persuasive because the medical evidence of record shows that the claimant would be limited to a range of light work with postural limitations.
>
> However, whereas Dr. Bahm indicated that the claimant would have some limitations regarding her ability to stand or walk, I have found that the claimant would require a sit/stand option but could perform six hours of standing and/or walking during an eight-hour workday. Furthermore, the record does not support the conclusion that the claimant would be unable to stoop, kneel, crouch, or crawl. These lesser limitations are supported by evidence that the claimant has exhibited only mild abnormalities on imaging (Exhibit 8F/4) and had good range of motion on the physical examination performed by this consultative examiner (Exhibit 9F/2).
>
> Given the above, I have limited the claimant to a reduced range of light work with postural and environmental limitations. These provisions acknowledge objective signs observed on clinical testing as well as the possibility of continuing symptoms despite treatment. Further, given indications of difficulties with prolonged standing or walking due to knee pain, I have included a sit/stand option.

Tr. 17-18.

The ALJ found Dr. Bahm's opinion "partially persuasive" and specifically supported her opinion of Garner's residual functional capacity with evidence that Garner exhibited "only mild abnormalities on imaging" and "had a good range of motion on the physical examination performed by the consultative examiner." *Id.* This is sufficient to meet the supportability requirement.

Additionally, the ALJ noted earlier in her opinion that:

8

> The medical record does document complaints of chronic joint pain, observations of tenderness at the medial joint line (Exhibit 9F/2), and x-rays showing some joint space narrowing (Exhibit 8F/4). However, there is no evidence of reliance on an assistive device, whether requiring one hand or two hands, to walk.

Tr. 16.

The supportability factor evaluates how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)." 20 C.F.R. § 416.920c(c)(1). In other words, "supportability looks internally to the bases presented by the medical opinion itself." *Sharon H. v. Kijakazi*, No. 5:21-CV-167-H, 2022 WL 3951488, at *3 (N.D. Tex. Aug. 31, 2022). Under the supportability factor, the ALJ's evaluation is limited to the objective medical evidence and supporting explanations that the medical provider relied upon in finding the plaintiff's limitations. *See* 20 C.F.R. § 404.1520(c)(1). Objective medical evidence includes "medical signs, laboratory findings, or both" but does not include diagnosis. *See* 20 C.F.R. § 416.913(a)(1); 20 C.F.R. § 416.913(a)(3).

Dr. Bahm marked answers on the physical assessment form without providing any narrative explanation for the limitations selected. Tr. 722-27. This alone is sufficient for the ALJ to conclude supportability weighed against finding her opinion persuasive. "The use of such checklist forms is generally viewed with disfavor among the federal courts of appeals and district courts within the Fifth Circuit when the forms are not adequately supported by any narrative citations to clinical findings." *Brown v. Astrue*, No. 11-2919, 2013 WL 620269, at *6 (E.D. La. Jan. 18, 2013); *see Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (finding good cause

9

to assign little weight to a treating doctor's questionnaire opinion "due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examination..."). In this case, Dr. Bahm examined Garner, and concluded that "she has early osteoarthritis in her right knee." Tr. 718. The radiology report also found "mild degenerative osteoarthritis in medial right knee joint compartment. No fracture, dislocation, or joint effusion." Tr. 719. Also, Dr. Bahm's questionnaire answer stating Garner's right knee had a "100 degree" range of motion is internally consistent with her report, where she states that "the right knee has a good range of motion." Tr. 718. As for a positive Homan's sign, that relates to whether a patient suffers from deep vein thrombosis which is irrelevant here.

The record reflects that while Garner reported at the hearing that she required a cane to walk, the medical record nowhere stated as assistive device was prescribed by a medical professional. And there is no record that she required assistance walking in the medical record, such as a doctor noting she walked with a cane or recommending use of one. Garner points to no evidence in the record support Dr. Bahm's limitations, and the ALJ specifically noted the positive findings undermining those limitations as supportive of Garner's RFC. Tr. 17-18.

The ALJ's discussion of the persuasiveness of a medical opinion and the consistency and supportability factors is not confined to the specific discussion of the opinion itself but is considered in light of the entire RFC discussion and the evidence discussed therein. *See e.g. Teixeira v. Comm'r, SSA*, No. 4:21-CV-00003-SDJ-CAN, 2022 WL 3130859, at *9 n.15 (E.D. Tex. July 12, 2022), *report and recommendation*

*adopted*, 2022 WL 3107856 (E.D. Tex. Aug. 4, 2022) (emphasizing that "the ALJ's assessment and articulation of consistency and supportability must be read in full context of the RFC findings"); *Cox v. Comm'r of Soc. Sec.*, No. 3:21-CV-53-JMV, 2022 WL 834294, at *3-4 (N.D. Miss. Mar. 21, 2022) (rejecting a request for remand where the ALJ did not provide an explicit discussion of the factors of supportability and consistency in the same paragraph in which he found an opinion not persuasive, where it was evident from the totality of his decision that he properly considered these factors). In this case, the ALJ considered the entire record in determining Garner's RFC.

With regard to Garner's argument that the ALJ "put the cart before the horse" and used Garner's RFC to discount Dr. Bahm's opinion, this argument is without merit. The ALJ merely stated later in her opinion why she partially discounted Dr. Bahm's opinion in determining Garner's RFC. The ALJ did not use the RFC to discount the opinion; but rather, medical evidence in the form of the results of the physical exam and imaging to discount Dr. Bahm's extreme limitations of Garner's RFC.

The undersigned concludes substantial evidence supports the ALJ's supportability analysis for Dr. Bahm's opinion and substantial evidence also supports the ALJ's RFC.

**B.  Lay interpretation of medical evidence**

Garner argues that in "rejecting" Dr. Bahm's opinion that Garner could only sit/stand two hours of a workday, the ALJ improperly interpreted the "raw medical

11

data," including the imaging results and the diagnosis of mild degenerative osteoarthritis, and inserted her own lay medical opinion. Dkt. 17 at 9-10.

In making the RFC determination, the ALJ considers the totality of evidence in the record, not solely medical opinions. 20 C.F.R. § 404.1529(a)-(d). In addition to any medical opinions, the ALJ considers Plaintiff's medical history, medical signs and laboratory findings, statements about the impact of symptoms, daily activities, medication, and other treatment. 20 C.F.R. § 404.1529(a)-(d). This "necessarily requires the ALJ to interpret, assess and balance both medical and non-medical evidence." *Adamek v. Comm'r of Soc. Sec.*, No. 5:21-CV-00084-RWS-JBB, 2022 WL 4587846, at *4 (E.D. Tex. Sept. 29, 2022) (citing *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012)).

The ALJ's RFC "is not a medical opinion." *Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003). Also, the ALJ's RFC need not match a medical opinion, so long as substantial evidence supports it. *Myers v. Saul*, No. SA-20-CV-00445-XR, 2021 WL 4025993, at *8 (W.D. Tex. Sept. 3, 2021) ("[T]he ALJ is not required to have a medical opinion that matches his RFC determination[,]" "so long as substantial evidence supports the determination[.]"). Accordingly, an ALJ's RFC determination is improperly based on his lay opinion when substantial evidence does not support the RFC. *See Taylor*, 706 F.3d at 602.

In this case substantial evidence supports the ALJ's RFC finding, and it is not improperly based on a lay opinion. The record reflects relatively normal objective medical findings. Tr. 718-19. Garner asserts she reported to Dr. Patrick Caldwell on

December 18, 2018, that she suffered from knee pain from a fall. Tr. 17, at 3. However, while Garner reported a fall in 2018, Tr. 512, she did not report actual knee pain to a medical professional[2] until the consultative exam with Dr. Bahm in 2021. Tr. 718. Dr. Bahm is the only orthopedist Garner had seen, although she reported visiting her primary care provider every three months. Tr. 43. The record does not reflect a referral to an orthopedist or discussion of such referral by her primary care physicians. Additionally, Garner reported at her hearing that she "just started taking" ibuprofen for her knee pain. Tr. 56. At her hearing, Garner also reported that she had recently taken in her 12-year-old granddaughter to live with her, that she does laundry, reads for five hours at a time, and does some cooking and cleaning including vacuuming. Tr. 36-56.

Thus, in this case, the ALJ took into account not only the mostly normal findings in Dr. Bahm's exam, but also that Garner engaged in many activities of daily living, along with other evidence, including the lack of other supporting evidence of her limitations in determining Garner's RFC. *See Adams v. Saul*, No. 19-CV-12282, 2020 WL 5537102, at *5 (E.D. La. Sept. 1, 2020), *report and recommendation adopted*, No. 19-CV-12282, 2020 WL 5535471 (E.D. La. Sept. 15, 2020).

The undersigned finds that the ALJ's disability determination is without error and supported by substantial evidence.

---

[2] On a visit to Dr. Webb on May 10, 2019, she reported "no muscle aches, no localized joint pain, and no localized joint stiffness." Tr. 508. On December 18, 2018, while noting the fall, Dr. Caldwell reported "no musculoskeletal symptoms" and that musculoskeletal symptoms were "normal." Tr. 512-513. The medical result was the same for March 6, 2018. Tr. 519.

## IV.  ORDER AND FINAL JUDGMENT

In accordance with the foregoing discussion, the undersigned **AFFIRMS** the decision of the Social Security Commissioner and **ENTERS** Final Judgment in favor of the Commissioner. Additionally, this case is **ORDERED CLOSED**.

SIGNED February 13, 2023.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE